IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JON WALLI RAMZAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security,[1] ) <br> ) <br> Defendant. ) <br> ) | No. 12 C 7362 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jon Walli Ramzan's claims for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 22] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 32] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

Plaintiff filed a claim for Disability Insurance Benefits on October 16, 2008, and an amended application on November 26, 2008, alleging disability since September 23, 2005. The claim was denied initially and upon reconsideration, after

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Two hearings were held, the second of which took place on June 16, 2011. Claimant personally appeared and testified and was represented by counsel. Two medical experts testified at the second hearing, and a vocational expert testified at each hearing.

On October 11, 2011, the ALJ denied Ramzan's claim for Disability Insurance Benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[2]

### A. Background

Ramzan, who was originally from Pakistan, was born on June 19, 1966 and was forty-five years old at the time of the second ALJ hearing. He attended college for two years and can speak English but has trouble reading. His prior work history includes material handler, fork lift driver, and pizza delivery driver. He claims disability due to various mental and physical infirmities, including impairments to his knees, neck, and back, as well as post-traumatic stress disorder ("PTSD"), anxiety, and depression.

Plaintiff claims that he has numbness in his hands, and he cannot lift or straighten his arms, lift heavy weights or hold objects. He states that he can only

---
[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

walk about half a block and uses a cane or a crutch when the pain is too severe. His wife needs to help him dress and shower. He does not do any chores or yard work, and he can only drive short distances. He states that he is in pain all the time, he cannot concentrate, and because pain interrupts his sleep, he naps in the afternoons. He alleges that he cannot concentrate or remember well enough to read or watch television. Ramzan has nighttime fears that someone will come into his house and kill him, he cries frequently, and he does not socialize much.

B.     **Medical Evidence**

Ramzan has a relatively long history of impairment in both knees, beginning with a left knee reconstruction in May 2004. A functional capacity evaluation in July 2005 found maximum improvement, with limitations on lifting no more than twenty-five pounds, no ladders, and no squatting. Plaintiff began experiencing problems with his right knee in March 2005, and MRIs showed tears of the medial meniscus and ACL. Arthroscopy with partial medial meniscectomy or repair and ACL reconstruction was recommended. Ramzan underwent physical therapy and took medication, and was restricted to light duty work. His right knee was reinjured in September 2005 while operating a forklift at work. Ramzan apparently reinjured the right knee again in October 2008. He had ACL reconstruction on July 27, 2010.

Ramzan also reported cervical and low back pain in December 2006 following a car accident in which the vehicle he was riding in was rear-ended. His treatment plan at the time consisted primarily of therapeutic exercise. In late 2008, he was diagnosed with lumbar spondylosis (degenerative changes in the spine) and lumbar

3

radiculopathy (nerve irritation radiating from the lower spine). At a November 2008 follow-up related to his spinal pain, he was noted to have reduced and painful range of motion in the neck, and his lumbar range of motion was limited by pain. He was prescribed medication including ibuprofen and Tramadol, physical therapy, and received occasional epidural steroidal injections. Ramzan has continued to see physicians for follow-up on his back and knee pain, but he has had no further surgical or other major medical procedures performed. The record reflects a number of instances in which Ramzan used a cane or crutches for ambulation, but he has not used one continuously.

### C. **Vocational Expert Testimony**

At the second hearing, Vocational Expert ("VE") Aimee Mowery testified.[3] The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") limiting him to light work with certain additional exertional and non-exertional limitations could perform any of Plaintiff's past work. The VE said that the person could not, but other jobs would be available, including mail clerk (3,000 jobs in the Chicago region), hand packager (16,000 jobs), and sorter (10,000 jobs). At a sedentary level, with additional restrictions of simple, routine repetitive work; low stress with only occasional decision making; and only occasional interaction with the public, supervisors, or co-workers, available jobs include sorter (400 jobs), hand packager (1,000 jobs), and inspector (400 jobs).

---

[3] The transcript incorrectly states that Ms. Mowery's testimony is that of the claimant. (R. 133.)

4

Upon questioning by Plaintiff's counsel, the VE stated that she obtained the numbers of jobs available from statistics available from the U.S. Bureau of Labor. She also relied on her recent experience having done labor market surveys for all four occupations stated at the light and sedentary levels. She would not provide counsel with the surveys, because she claimed "that is privileged information from the client that I provided the reports to." (R. 143, 149.)

### D.  **ALJ Decision**

The ALJ found at step one that Ramzan had not engaged in substantial gainful activity since his alleged onset date of January 17, 2006. At step two, the ALJ concluded that Claimant had severe impairments of history of left knee reconstruction, right knee subluxation, right acromioclavicular reconstruction, cervical and low back pain, degenerative disc disease, depression, and PTSD. The ALJ concluded at step three that the impairments, alone or in combination, do not meet or medically equal a listing. The ALJ then determined that Plaintiff retained the RFC to perform light work with certain restrictions. Specifically, the ALJ opined that Ramzan could perform no kneeling, crawling, full squatting, or climbing of ladders, ropes, or scaffolds; only occasionally stooping, balancing, and crouching; no working on uneven or slippery services or unprotected heights; no commercial driving; and he would need the allowance of an assistive device for pain. He further was limited to frequent overhead reach with the right arm and had non-exertional limitations restricting him to simple, routine, repetitive tasks with only occasional interaction with the public, co-workers, and supervisors.

5

The ALJ concluded at step four that Claimant could not perform his past relevant work. At step five, based upon the VE's testimony and Ramzan's age, education, work experience and RFC, the ALJ concluded that he can perform jobs existing in significant numbers, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.*

Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an

accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Claimant argues that the ALJ's decision contained the following errors: (1) step 3 determination; (2) credibility analysis; (3) RFC determination; and (4) step 5 determination.

### A. Step 3

Ramzan argues that the ALJ incorrectly concluded at step 3 that his impairments do not meet or medically equal listings for both dysfunction of a joint and mental impairments.

#### 1. *Dysfunction of a Joint*

Ramzan first argues that the ALJ erred in analyzing his impairment under Listing 1.02 – Major dysfunction of a joint(s), which is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .
> 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 1.02).

In addition, Plaintiff contends that the ALJ omitted any evidence supporting a finding that he met Listing 1.03, which involves "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 100.B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 1.03).

9

Both listings require a finding that the claimant has an inability to ambulate effectively, which is defined in the regulations as:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 1.00(B)(2)(b)(1)-(2)).

In concluding that Ramzan had not met the listings, the ALJ acknowledged that he occasionally used one or two crutches but found that "there is no evidence that he could not ambulate effectively during any one period of the requisite 12-month time period." (R. 13.) The ALJ also relied on testifying expert Dr. Martin's conclusion that he did not meet the requirements of any listing for musculoskeletal impairments. Plaintiff contends that the ALJ erred in relying too heavily on the testimony of Dr. Martin, whose specialty is internal medicine, not orthopedics, without a critical review, and further that the ALJ's finding that Ramzan did not experience ineffective ambulation was in error. The Commissioner responds that Dr. Martin is qualified to opine about Ramzan's physician impairments; the ALJ reasonably relied on her conclusions; and the ALJ was not required to examine every piece of evidence in the record in coming to her conclusion.

The Court concludes that the ALJ failed to build a logical bridge to her conclusion that Ramzan did not meet the requirements of ineffective ambulation. While the evidence does show that Plaintiff did not always use an assistive device, the ALJ did not explain how she determined that he never used it continuously for a twelve-month period.[4] More significantly, the ALJ stopped her analysis after finding he did not have consistent need for an assistive device. The regulation contains a non-exclusive list of examples, only one of which is the use of two crutches or canes. The ALJ should consider the other record evidence to determine whether Ramzan meets the criteria for ineffective ambulation, including (but not limited to) his reported difficulty climbing stairs; pain when walking; and DDS consulting physician Dr. Karri's conclusion that Plaintiff cannot walk fifty feet without support.

### 2. *Mental Impairments*

The ALJ concluded that Ramzan's mental impairments did not meet or equal Listings 12.04 or 12.06. The ALJ found that Plaintiff has only a mild restriction in his activities of daily living, based on his conservative treatment and mental status examinations that were generally normal, despite his reports of being depressed and anxious. The ALJ said she gave Ramzan the benefit of the doubt in finding moderate difficulties in social functioning, due to his reported mistrust of people,

---

[4] The ALJ also found it significant that Dr. Bare reported that in March 2009 that patients with a torn ACL do not typically need crutches for stability. But Ramzan reported to Dr. Karri in June 2009 that he had been using crutches for about two years not for knee pain, but when his back pain was severe. The ALJ should have explored the reasons for the stated need for an assistive device to determine whether it is consistent with the medical record.

11

despite his conservative treatment. As to concentration, persistence, and pace, the ALJ found mild difficulties based on testifying expert Dr. O'Brien's conclusion that his mental status examinations showed a good attention span and no indication of memory issues.

Plaintiff argues at great length that the ALJ did not properly apply the special technique in evaluating his mental impairments under Listings 12.04 and 12.06; the ALJ failed to consider contrary medical evidence with respect to her conclusions with respect to the "B" criteria of the listings; and Dr. O'Brien's conclusions were wrong. The Court need not address Plaintiff's arguments in detail, however, as he has failed to point to evidence documenting his impairments in the context of the listing criteria, allowing this Court to discern the particular error allegedly made by the ALJ. Furthermore, Ramzan has not explained how his mental impairments would result in any greater functional limitations than those accounted for in the ALJ's RFC determination.

### B. Credibility

Plaintiff argues that that the ALJ's credibility analysis was in error because her opinion includes the boilerplate statement regarding credibility, and the ALJ failed to link Plaintiff's statements to her credibility finding as required by SSR 96-7p. The Commissioner maintains that the ALJ considered a variety of factors in her credibility determination, specifically his conservative treatment history; his work activity after becoming disabled; and the medical evidence, and therefore Plaintiff has not shown the decision to be patently wrong.

12

An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). When evaluating a plaintiff's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see* SSR 96-7p at *3. When the claimant attends an administrative hearing, the ALJ "may also consider his or her own recorded

observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p at *5.

The Court agrees with the Commissioner that the ALJ's use of the boilerplate language sharply criticized by the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), is not by itself fatal, as the decision discussed factors beyond the boilerplate. However, the Court finds that the ALJ's credibility determination was not supported by substantial evidence. Plaintiff alleges impairment due to pain, and the medical evidence does not contradict his claim. Moreover, the ALJ failed to explore his activities of daily living and functional restrictions as they relate to his credibility on the issue of pain. In addition, the ALJ's statement that he had a conservative treatment history (presumably referring to the time after his multiple knee surgeries) does not by itself lead to the conclusion that his testimony is not credible. The ALJ did not explain what treatment, other than medication and physical therapy, Ramzan could have pursued after surgery. Finally, his brief work history alone does not make his claims incredible. *See Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003); *see also Czarnecki v. Colvin*, 595 Fed. Appx. 635, 644, 2015 WL 55438, at *8 (7th Cir. 2015) (unpublished decision) (faulting ALJ for finding a claimant's work efforts were inconsistent with disability, particularly where the claimant had to stop working due to pain).

## C. RFC Determination

Plaintiff claims the ALJ's RFC determination was incorrect because it did not cite specific evidence and facts supporting his ability to perform sustained work activities in an ordinary work setting, on a function-by-function basis. Specifically, Ramzan argues that the ALJ did not consider his ability to sit, stand, walk, reach, lift, or other elements of basic work activities, with reference to medical facts and the non-medical evidence in the record, and considering the combination of his impairments.

Ramzan believes that the ALJ improperly selected portions of the medical record supporting her ultimate conclusion without weighing all the evidence in the record, particularly that of treating physicians. By way of example, Claimant states that the ALJ concluded that there was "clearly documented recovery" from his knee procedures in 2005, (R. 16), without referring to later evidence that his right knee was still giving him problems as of July 9, 2010, (R. 595).

In response, Defendant points to the ALJ's statements that examinations revealed generally normal ranges of motion; his physical and mental conditions appeared to improve with conservative treatment; and the testifying experts did not find that his impairments were wholly disabling.

The Court concludes that the ALJ's opinion regarding his physical limitations was not supported by substantial evidence. In determining that Ramzan's "range of motion was generally normal" in relation to his cervical and low back pain, the ALJ cites to two pages of the record, neither of which contains the cited conclusion. (R.

15

15, citing R. 449, 452.) The first citation was to progress notes from an October 2008 follow-up visit related to low back pain. The cited page does not refer to range of motion at all, but the following page (which was not cited) states that Plaintiff's lumbar range of motion "is limited in testing by pain." (R. 450.) The other page cited by the ALJ is from September 2008 progress notes related not to his back pain, but to his right knee pain. (R. 452.) There may or may not be evidence in the record supporting the ALJ's conclusions, but it is not the Court's function to scour the medical record for such evidence. It is also not the duty of the Court to check all of the ALJ's citations to determine whether there are any other errors, and to further analyze whether any such errors are harmless.

### D. Step 5 Determination

Finally, Plaintiff argues that the step 5 determination was erroneous because the VE refused to provide Ramzan's counsel with a copy of an employee survey at the second hearing. Claimant contends that the government has thus failed to meet its burden of demonstrating that there are jobs he could perform.

The Commissioner responds that the VE's conclusions were based on the U.S. Bureau of Labor statistics as well as her experience as a vocational replacement specialist in this area. Defendant further states that the ALJ properly addressed the issue of the job survey, by accepting the VE's statement that she could not produce the underlying surveys because they were privileged. The ALJ also noted that the Bureau of Labor statistics were available to the public, the VE adequately testified about her methodology in reaching the job numbers, and Ramzan's

attorney never produced any statistical data challenging the VE's assessment about jobs or numbers of jobs.

"It is the Commissioner's burden at Step 5 establish the existence of a significant number of jobs that the claimant can perform." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004). Although expert standards at an ALJ hearing are less stringent than those under the Federal Rules of Evidence, "an ALJ's findings must be supported by substantial evidence" and thus "an ALJ may depend upon expert testimony only if the testimony is reliable." *Id.* at 910. "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *Id.* at 911.

Ramzan's counsel did challenge the foundation of the VE's opinions at the hearing and asked for the underlying surveys on which she in part relied. The ALJ's statement that she has "no authority to order the vocational expert to produce her job surveys as they are privileged documentation/correspondence with her individual clients," (R. 19), is unsupported. While such work product by a vocational expert may be confidential, the ALJ identified no applicable privilege, and the Court cannot discern one. The ALJ could have ordered their production to Plaintiff's counsel subject to a protective order. The ALJ emphasizes that publicly available statistics also informed the VE's opinion, but nowhere does she explain that the VE would have produced the same assessment based on public information alone. The VE was required to produce for inspection any data on which she relied in making

17

her job assessment, and she did not do so. The ALJ also erred in her attempt to shift the burden to Plaintiff to produce statistical evidence that there are not in fact jobs in significant numbers he could perform.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 22] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 32] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:     October 9, 2015**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**